INHABITANTS OF the TOWN OF BOOTH-
BAY and State of Maine

v.

NATIONAL ADVERTISING COMPANY.

Supreme Judicial Court of Maine.

Nov. 12, 1975.

Locke, Campbell & Chapman, by Frank G. Chapman, Lester A. Olson, Dept. of Transp., Augusta, for plaintiffs.

Marden, Dubord, Bernier & Chandler, by Albert L. Bernier, Waterville, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

The Town of Boothbay brought an action to enjoin defendant National Advertising Company from maintaining a billboard within the Town in violation of a Town ordinance. The Superior Court (Lincoln County) granted a permanent injunction and in so doing upheld the validity of the ordinance in question. The defendant appeals, and we deny the appeal.

The record on appeal presents a tale of two ordinances. In March, 1970, the Town of Boothbay passed an ordinance which would have compelled the removal of all of defendant's billboards within the Town that were located off of the premises of the business for which they advertised. Defendant sought to enjoin the Town from enforcing this ordinance, and in October, 1971, the Superior Court (Lincoln County) enjoined the Town from enforcing the ordinance. We do not believe that it is necessary to discuss the legal bases of the 1971 Superior Court injunction, except to say that the award of process against the Town purported to be a final and complete adjudication by the Superior Court.

The Town did not choose to appeal the adverse decision of the Superior Court. Instead, the Town officers submitted to the Town Meeting articles constituting a revision of the previous ordinance. The revision had been drafted and prepared with an eye to obviating the objections raised by the Superior Court in its 1971 injunction. On March 6, 1972, the Town Meeting duly adopted the revised ordinance, which by its terms was effective after December 31, 1972 against defendant's off-premise billboards.

By May, 1973, defendant had not yet complied with the revised ordinance. In March, 1973, defendant was informed by the State Department of Transportation that the annual State permit authorizing its billboard would not be issued, since it appeared to the Department that the advertising structure in question was not in conformity with existing municipal ordinances. See 32 M.R.S.A. § 2714. The Town and the Department then sought to enjoin defendant's maintenance of a billboard on the land of one Freemont Giles of Boothbay as a violation of the provisions of the ordinance. On March 1, 1974, the Superior Court granted the injunction. This appeal resulted, and issues as to the validity of the revised ordinance and of the 1974 injunction pursuant to that ordinance are now before this Court.

We think it relevant to summarize and discuss the revised sign ordinance adopted

by the Town on March 6, 1972. In Section 1, "Preamble and Purpose," the ordinance declares that "the proliferation of advertising signs along and beside the public ways of the Town constitutes a serious hazard to the motoring public." The ordinance then cites the effect of the wayside signs as distractions to drivers, as obstructions of vision at curves and at other traffic hazard areas, and as despoilers of the natural scenic beauty of the Town and its countryside. Additionally, the preamble asserts the protection of the public safety and the promotion of the general welfare as grounds for the ordinance.

In its operation, the ordinance of March 6, 1972, effectively prohibits all off-premise billboards and advertising signs in the Town of Boothbay that are "visible from a public way." Exceptions are made for signs of a certain size that are displayed on the land of the owner's place of business and that are placed so as not to obstruct motorists' vision. The prohibitory sections ban all new nonconforming signs as of the date of the ordinance, which was effective immediately upon adoption. By the ordinance's terms "[a]ll existing display advertising signs now erected along any highway, street, road or private way and visible from a public way shall be removed not later than December 31, 1972." Thus the ordinance purported to act in praesenti as well as in futuro and prescribed a tolerance period of 10 months for nonconforming signs extant at the effective date of the ordinance.

Defendant's present appeal argues three issues in the main:

(1) that the former adjudication and the 1971 injunction operate by res judicata and collateral estoppel to compel a declaration of the invalidity of the present ordinance;

(2) that the ordinance lacks any clear, real, and substantial relation to a permissible purpose under the police power; and

(3) that the Town ordinance prohibiting all existing off-premise advertising signs is a taking of property without due compensation and unconstitutionally deprives defendant of vested property rights.

I.

Defendant urges that the present ordinance is substantially identical to its predecessor ordinance which was declared invalid and was enjoined by the Superior Court. Defendant argues that principles of res judicata and collateral estoppel apply to render the former adjudication a binding determination of the invalidity of the present ordinance. Defendant reasons that since the present ordinance is similar to its predecessor in language and effect, the former adjudication should operate as a bar to enforcement, at least as between these two same parties.

This is a horse soon curried. To reject defendant's argument we need not explore the recondite branches of res judicata and collateral estoppel. It is plain to us that principles of res judicata and collateral estoppel cannot control our consideration of the present appeal. Because one ordinance is invalidated as unenforceable to accomplish its purpose does not foreclose the municipality from seeking to accomplish a permissible purpose by permissible means. To hold otherwise would frustrate towns from revising or correcting ordinances which have been invalidated by the courts.

The previous ordinance was construed by a Justice of the Superior Court as a zoning ordinance. The present ordinance purports on its face to advance the permissible goals of public safety on the roads, regulation of potential traffic hazards, and the preservation of the natural beauty of the roadside in furtherance of the general welfare of the Town. The operative provisions of the ordinance consistently implement these goals by regulating or prohibit-

ing advertising signs visible from public ways. No reason appears to suggest that the second ordinance on its face is a sham or an insubstantial realignment of words which would in actuality present the same cause of action between the same parties. In the absence of evidence compelling such a conclusion, there is no basis to apply principles of res judicata.

Similarly, we are not apprised of any material issue of fact or law singularly established in the former adjudication so as to be controlling or determined in the present appeal. Accordingly, there is no basis to apply principles of collateral estoppel.

## II.

■ For the present ordinance to be a proper enactment within the police power of the plaintiff Town, the ordinance must conform to the enabling legislation by which the legislature has delegated police powers to the towns and cities of our State. Additionally, the ordinance must not be offensive to due process of law under the constitutions of Maine and of the United States.

As pertinent to the present appeal, the police powers delegated by the legislature under 30 M.R.S.A. § 2151 are as follows:

A municipality may enact police power ordinances for the following purposes:

(1)(A) Promoting the general welfare; preventing disease and promoting health; providing for the public safety. . . .

(2)(A) Providing for the protection and maintenance of public ways and other public property.

It remains to determine whether the instant ordinance was duly enacted within these delegated powers and whether the ordinance is a constitutional application of these powers.

The Town urges that the present ordinance affecting billboards may be sustained as a provision for the protection of public ways under § 2151(2)(A). Alternatively, the Town urges that the ordinance may be sustained as reasonably promoting the public safety and the general welfare under the broad police powers of § 2151(1)(A). We do not think it necessary to distinguish between the statutory subsections to determine whether one or the other is the exclusive head from which derives the Town's right to regulate billboards under the police power. To the extent that the regulation of billboards may promote traffic safety by reducing accidents on the road or roadside, we do not think it implausible to ground the ordinance as a fair implication from the power to protect the public ways.

Whether it is reasonable for us to augment the ground of traffic safety with the broader claim to regulate billboards and advertising signs in the interest of the general welfare of the community we need not now decide.

■ Although variously expressed, it is established that the requirements of due process exact that the law shall not be unreasonable, arbitrary, or capricious and that the state's police power can be properly exercised only where there is a reasonable relationship to the public health, safety, morals, or welfare. *State v. Rush,* Me., 324 A.2d 748, 752 (1974). We examine the subject ordinance under the due process standard bearing in mind that there is a presumption favoring the constitutionality of state laws, and in determining the validity of municipal ordinances, their reasonableness will be presumed. Id. at 753.

■ Moreover, the burden is on the party challenging the ordinance to establish the complete absence of any state of facts which would support the need for the laws enacted by the municipality. It is not necessary for the state to demonstrate to us that the actual evils exist. Id. The ultimate test of reasonableness is whether the regulatory means adopted by a municipality

bear any rational relationship to the evil to be corrected. *Buck v. Kilgore,* Me., 298 A.2d 107, 110 (1972).

While the rationale of traffic safety might have been disputed at trial so that the Town would have to make an affirmative showing as to the rational relation of the present ordinance to a permissible objective under the police power, cf. *Ace Tire Co. v. Municipal Officers of City of Waterville,* Me., 302 A.2d 90, 98 (1973), no such attack upon the ordinance was made in the present case. Consequently, the ordinance enjoys on its face a presumption of constitutionality which we are not prepared to rebut as of our own initiative. See *City of Saco v. Tweedie,* Me., 314 A. 2d 135, 137 (1974).

■ We do not deem inappropriate the legislative means employed as to the achievement of the ends sought. The ordinance commences with a two-fold definitional and classificatory scheme. On-premise signs are to be regulated according to their size and their relation to the premises on which they are located. In accordance with the public safety rationale, off-premise signs are prohibited insofar as they are visible from a public way. According to well-established principles, the separate classification, as a permitted use, of signs advertising businesses conducted upon the premises where the signs are located, as against a prohibited use of like signs advertising products or services available in other locations, is a reasonable classification which does not as a matter of law produce arbitrary discrimination or deprive the defendant of the equal protection of the laws. *Rockingham Hotel Company v. North Hampton,* 101 N.H. 441, 146 A.2d 253, 255 (1958), and cases cited therein; see *United Advertising Corp. v. Borough of Raritan,* 11 N.J. 144, 93 A.2d 362, 365–66 (N.J.1952).

■ The regulation of signs and billboards is a proper object of the police power. *Murphy, Inc. v. Town of West-port,* 131 Conn. 292, 40 A.2d 177, 178–79 (1944); *General Outdoor Advertising Co. v. Department of Public Works,* 289 Mass. 149, 193 N.E. 799, 816–17 (1935).

■ We recognize that the classification and regulation of off-premise signs and billboards in the instant case occur under an ordinance pursuant to the general police power rather than a zoning ordinance which regulates by uses and districts. This Court has upheld the facial validity of ordinances which effectively barred the location of trailers or mobilehomes in any zone of a Town, save only that in certain zones mobilehome parks were permitted. *Wright v. Michaud,* 160 Me. 164, 177, 200 A.2d 543, 550 (1964). We think the classification and regulation of signs and billboards in the present ordinance may fairly be compared to the classification and regulation in *Wright.* Granted, it is possible that the distinct policies to be advanced by a comprehensive zoning plan will sometimes sustain regulation or prohibition by districts when such regulation or prohibition might be unreasonable by a "blanket" ordinance under the police power. See e. g., *Norate Corporation v. Zoning Board of Adjustment of Upper Moreland Township,* 417 Pa. 397, 207 A.2d 890, 895 (1965). But we will not condemn a regulation or prohibition of uniform effect simply because the subject could have been approached by the less restrictive alternative of a zoning ordinance based on uses or districts. See *Rush,* supra, 324 A.2d at 753–54 & n. 6.

That the instant ordinance effectively prohibits off-premise billboards throughout the Town of Boothbay, does not compel us to deem the ordinance unreasonable. On the record before us, the billboards are regulated pursuant to a valid and justifiable exercise of the police power. True those persons interested in the production and utilization of billboards, and subject to the jurisdiction of the Town, are manifestly constrained in their liberty to employ billboards. But under our constitutional government this has ever been the fate of

those subjects which have come within the orbit of plenary regulation under the police power. According to the circumstances of the case, the power to regulate embraces the power to prohibit, so long as the requisite constitutional guarantees are satisfied. We conclude that the classificatory and regulatory format embodied in the instant ordinance is pursuant to the police powers of the Town, and the ordinance was enacted upon an adequate basis of public necessity, and is presently enforceable.

## III.

■ We have held that the *object* of the instant ordinance may be deemed the provision for the public welfare and that the regulatory and prohibitory *means* employed in the ordinance are appropriate to the achievement of the ends sought. See *Rush,* supra, 324 A.2d at 753. It remains to consider whether the *manner* of exercising the power pursuant to the ordinance is unduly arbitrary or capricious or violative of due process.

Defendant argues that the manner by which the ordinance is to be presently enforced amounts to a taking of its property interest in the billboard, and an impairment of its vested rights under the rental agreement with the landowner by which the billboard is maintained. But we may take it as settled in the field of billboard regulation under the police power, that such ordinances are enforceable, when otherwise valid, in praesenti as well as in futuro. *Kansas City Gunning Advertising Co. v. Kansas City,* 240 Mo. 659, 144 S.W. 1099, 1103 (1912). The consequences of the instant ordinance are not a taking; the billboard is neither condemned, nor is it seized and dedicated to a public purpose. Rather, the ordinance requires the (defendant) and others similarly situated to refrain from the use or maintenance of their property in a manner which that enactment determines to be injurious and unlawful under the police power. See id. 144 S.W. at 1104. In *Kansas City Gunning,* the ordinance re-

quired that billboards be brought into conformity with its provisions within six months from the date of passage. In the event of noncompliance, the billboards were to be removed by summary process. See id. 144 S.W. at 1100.

■ We cannot say that the expectancy of maintaining a billboard rises to the level of an immutable or vested right. The extensive history of litigation surrounding the billboard and advertising industry persuades us that it is no surprise when billboards are subject to regulation; on the record in this case, so far as the fact is relevant, defendant had notice since 1970 that the Town was planning to circumscribe the use of off-premise billboards. Every regulation or reasonable prohibition is an impairment of the interests of the industry in the conduct of its affairs. Yet we cannot say on that account that every regulatory impairment must be accompanied by compensation. Within the confines of the constitution and the enabling statutes, the police power is plenary. The police power would be throttled if its every impairment of a private interest entailed compensation for the constraint imposed. Compensation is due only when the impairment is so substantial as to amount to a taking.

■ Here, we are satisfied that there is no taking. The ordinance provides a period of 10 months during which the nonconforming billboards are to be tolerated. By the end of the tolerance period, the billboards are to be removed. There is no question that during the tolerance period the reference billboard is the property of the defendant. Yet the defendant has not demonstrated to us or to the trial court that the actual property interest in the signs, as to their cost or intrinsic value, is substantially impaired or vitiated by the mandated removal. Neither is there any showing by defendant of the burdens involved in removing the signs or in relocating the billboards. The presence of salvage value in the signs may rebut the

harshness or pecuniary burden of a forced removal; yet there is no evidence from defendant on this subject. In short, defendant has provided no record basis which would warrant this Court to conclude that the instant ordinance constitutes a deprivation of defendant's property interest in the reference billboard without due process of law. Neither can we say that the tolerance period for the removal of the billboard is unreasonable in its effect upon the nature or extent of defendant's investment in the sign or in the burdens of removal that the ordinance imposes. We do not think a proper ordinance under the police power should be overturned solely on speculation as to the substantiality of the burdens imposed. See *Naegele Outdoor Advertising Company of Minnesota v. Village of Minnetonka*, 281 Minn. 492, 162 N.W.2d 206, 213–14 (1968).

As to the impairment of the existing rental agreements between defendant and Freemont Giles, owner of the land where stands the reference billboard, we think the instant ordinance an appropriate exercise of the police power. Consequently, it is no objection here that the performance of existing contracts may be frustrated by prohibitions duly sustainable as police power enactments. See *Art Neon Co. v. City and County of Denver*, 488 F.2d 118, 123 (10th Cir. 1973).

Certain statutes have been brought to our attention as suggesting the standards with which the municipalities of Maine must comply in their efforts to regulate billboards and advertising signs. See 32 M.R.S.A. § 2719(7). Under these statutes, the legislature has provided that when certain roadside signs are determined to be nonconforming under appropriate state or federal regulations, the police power of the State may be exercised to compel the removal of the nonconforming signs without compensation. The "amortization" period may vary for different types of signs but in no case shall it be longer than 5 years. We do not find § 2719(7) to be definitive in defining the standards by which

nonconforming signs are to be subjected to uncompensated removal. It is true that the statute suggests that the recoupment of the owner's capital investment in the sign is a factor affecting the reasonableness of the tolerance period. But there is no indication that the legislature intended the statutory subsection to apply to any subject other than the removal of signs pursuant to action by agencies of State government. We would be most reluctant to infer that § 2719(7) preempted the field in which the towns and cities of Maine can act pursuant to their delegated powers. We are confirmed in our belief, that there is no State preemption, by an examination of 32 M.R.S.A. § 2714, which requires that before a billboard shall receive a permit from the State, the application for a permit shall contain a certificate stating that the proposed advertising structure is in conformity with existing municipal ordinances. We think the policy of the statute is to conform State action, where appropriate, to local ordinances duly enacted pursuant to the police power.

Such an ordinance is the one presently before us. We hold that the ordinance is tenably conceived and duly enacted. On this record, the tolerance period is sufficient. It follows that at the end of the tolerance period the use must cease. So far as possible we have examined the interests of the parties on a plane of reasonableness that would reconcile the impact of the police power on private interests with the aims of the public good to be realized. Considering the investment of the owner, the duration of tolerance period, the interest of the community, and the nature of the use, we conclude that the instant ordinance cannot be impeached on the facts presented. See *Village of Larchmont v. Sutton*, 30 Misc.2d 245, 217 N.Y.S.2d 929, 936 (1961).

The entry must be:

Appeal denied.

All Justices concurring.